Rodney J. Jacob *
RJacob@calvofisher.com
CALVO FISHER & JACOB
259 Martyr Street
Suite 100
Hagatna. Guam 96910
Telephone: +1 671 646 9355
Facsimile: +1 671 646 9403
* *Counsel of Record for Plaintiff Guardians of Katrina Schaller*

**IN THE UNITED STATES DISTRICT COURT**
**TERRITORY OF GUAM**

KATRINA SCHALLER, by and through her legal guardians KIMBERLY A. FEGURGUR and JOHN A. FEGURGUR,

Plaintiff

vs.

U.S. SOCIAL SECURITY ADMINISTRATION,

NANCY A. BERRYHILL, in her official capacity as Deputy Commissioner for Operations of the Social Security Administration

Defendants

CIVIL ACTION
File No. 1:18-cv-44

**COMPLAINT**

Rodney J. Jacob
RJacob@calvofisher.com
CALVO FISHER & JACOB
259 Martyr Street
Suite 100
Hagatna, Guam 96910
Telephone: +1 671 646 9355
Facsimile: +1 671 646 9403

ATTORNEYS FOR PLAINTIFF GUARDIANS OF KATRINA SCHALLER

Michael F. Williams, P.C.
(*Pro Hac Vice* Pending)
Susan M. Davies, P.C.
(*Pro Hac Vice* Pending)
Thomas J. Tobin
(*Pro Hac Vice* Pending)
Paul Suitter
(*Pro Hac Vice* Pending)
MWilliams@kirkland.com
Susan.Davies@kirkland.com
Tommy.Tobin@kirkland.com
Paul.Suitter@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: +1 202 879 5000
Facsimile: +1 202 879 5200

## INTRODUCTION

1. Katrina Schaller and Leslie Schaller are adult twins, both suffering from myotonic dystrophy, a debilitating hereditary condition. They maintain very limited economic means. The Supplemental Security Income ("SSI") program was designed to provide financial assistance to aged, blind, or disabled Americans in just such need. But Katrina lives on Guam; Leslie lives in Pennsylvania. As a result, Leslie receives the support of SSI, and Katrina does not. Eligibility for this federal benefit program that turns on the fortuity of residence violates the Guam Organic Act, 48 U.S.C. § 1421b, and the Equal Protection guarantees of the Fifth and Fourteenth Amendments to the Constitution. Its discriminatory application must be enjoined.

2. SSI provides assistance to more than eight million United States residents each year. Although citizenship sometimes factors into qualification for the program, *residency* can at times trump citizenship in determining eligibility. When Congress first enacted SSI in 1972, the statute limited eligibility for the SSI program to those individuals residing inside the "United States," defined as the fifty States and the District of Columbia.[1] The statute expressly excluded Puerto Rico, Guam, and the Virgin Islands from the definition of the "United States."[2] The residents of

---

[1] Social Security Amendments of 1972, Pub. L. No. 92-603, § 1614 (a)(1)(B), 86 Stat. 1329, 1471 (defining the term "aged, blind or disabled individual" as a "resident of the United States"); § 1614(e) 86 Stat. 1329, 1473-74 (defining the "United States" as "the 50 states and the District of Columbia") (*codified at* 42 U.S.C. § 1382c(e)).

[2] 42 U.S.C. 1382c(e) ("For purposes of this subchapter, the term 'United States', when used in a geographical sense, means the 50 States and the District of Columbia.") ; 1972 Amendments §

those territories, including American citizens, were deemed categorically "outside" the United States.[3] This definition clashes with other sections of the U.S. Code, such as the Old-Age, Survivors, and Disability Insurance Benefits program under Title II of the Social Security Act, which defines the "United States" as "the States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, *Guam*, and American Samoa."[4]

3. SSI was not the first federal program created to ensure a basic level of subsistence for low-income disabled Americans. The predecessor program, Old-Age Assistance, Aid for the Blind, and Aid for Permanently and Totally Disabled, Titles I, X, and XIV of the Social Security Act, resulted in a variety of state programs with varying eligibility criteria and inadequate benefit amounts. Congress designed the SSI program to remediate these deficiencies, "to provide a nationally uniform income floor for the aged, blind, and disabled," and to "provide uniform categorical eligibility conditions throughout all regions of the country; and provide uniform and efficient

---

303(b), 86 Stat. 1329, 1484 ("The amendments made…shall not be applicable in the case of Puerto Rico, Guam, and the Virgin Islands.").

[3] *See* Soc. Sec. Admin., *A Guide to Supplemental Security Income (SSI) for Groups and Organizations* 18 (2018) ("**For SSI purposes, we consider Puerto Rico to be outside the United States. People who move to Puerto Rico can't get SSI**.") (emphasis in original).

[4] Social Security Act, 42 U.S.C. § 410(i) (emphasis added).

administration of the program."[5] But Congress failed to extend such uniformity to most of the territories of the United States.[6]

4. In stark contrast with other territories, when the Commonwealth of the Northern Mariana Islands ("CNMI") entered into political union with the United States in 1976, Congress integrated it specifically by statute into the SSI program.[7] More than 1,000 residents of the CNMI enjoy SSI benefits.[8]

5. Katrina and Leslie Schaller are American citizens residing on American soil.[9] Katrina and Leslie were born on January 25, 1970 and grew up with their parents and older sister Kim in Westmoreland County, Pennsylvania.When their

---

[5] Sylvester J. Schieber, *First Year Impact of SSI on Economic Status of 1973 Adult Assistance Populations*, 51 Soc. Sec. Bull. 19, 20 (1988); James C. Callison, *Early Experience Under the Supplemental Security Income Program*, 37 Soc. Sec. Bull. 3, 3 (1974) ("Uniform, nationwide eligibility requirements and a Federal 'floor' of income for eligible persons are designed to provide more equitable treatment of aged, blind, and disabled persons with limited income and resources…").

[6] *But see* Supplemental Social Security Income for Aged, Blind, and Disabled, 42 U.S.C. § 1381 (stating that the purpose of the SSI program was "establishing a *national* program to provide supplemental security income to individuals who have attained age 65 or are blind or disabled") (emphasis added).

[7] Covenant To Establish a Commonwealth of the Northern Mariana Islands, Pub. L. No. 94-241, § 502(a)(1), 90 Stat. 263 (1976). ("The following laws of the United States…will apply to the Northern Mariana Islands…Section 228 of Title II and Title XVI of the Social Security Act… as it applies to the several States…"). *See* H.R.J. Res. 549; Pub. L. No. 94-241 (1976). SSI eligibility is "limited to residents of the 50 states, the District of Columbia, and the Northern Mariana Islands." House Ways and Means Comm., *2016 Green Book: Appendix B: Social Welfare Programs in the Territories*, https://greenbook-waysandmeans.house.gov/2016-green-book/appendix-b-social-welfare-programs-in-the-territories.

[8] Soc. Sec. Admin., *Northern Mariana Islands - Congressional Statistics, 2017 (2018)*, https://www.ssa.gov/policy/docs/factsheets/cong_stats/2017/mp.pdf (identifying 1,033 recipients of SSI in December 2017).

[9] *See* 42 U.S.C. § 410(i) ("The term 'United States' when used in a geographical sense means the States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa."); *see also* 48 U.S.C. § 1421a ("Guam is declared to be an unincorporated territory of the United States…").

parents separated, Katrina moved to Washington, Pennsylvania to live with her mother. But after her mother's death, Katrina moved to Guam to live with her sister Kim and brother-in-law John Fegurgur, who are her legal guardians. (Ex. A).[10] As twin sisters, Katrina and Leslie are very close; they speak to each other nearly every day by phone or internet video streaming. But Katrina and Leslie have not seen each other in person for almost ten years. They both suffer from myotonic dystrophy, a debilitating, degenerative genetic disorder affecting muscle function and mental processing. Katrina lacks the functionality to perform many of the activities of daily living, let alone earn a steady income, and is permanently disabled. Although myotonic dystrophy inhibits some aspects of Leslie's mobility, she leads a fully independent life in Greensburg, Pennsylvania, in part due to monthly SSI payments. Leslie, receives approximately $755 per month in SSI benefits because she lives in what the SSI statute defines as the "United States."

6. Yet Katrina is denied eligibility for federal SSI benefits solely because she lives on Guam, rather than in any of the fifty States, the District of Columbia, or the nearby territory of the CNMI. When Katrina lived with her mother in Washington, Pennsylvania, she enjoyed full access to SSI benefits. But when she moved to Guam to be with family upon her mother's death, Katrina's SSI benefits were cut off. Leslie would like to travel to Guam in the foreseeable future to be with

[10] In September 2018, Superior Court of Guam authorized Katrina Schaller's legal guardians to initiate this suit. The Superior Court's Order approving commencement of this action is attached as Exhibit A. Accordingly, Plaintiff Katrina Schaller's interests are represented by her legal guardians. Katrina Schaller's guardians are also U.S. citizens residing in Guam.

her sisters, but she cannot do so for more than thirty days for fear of losing access to the SSI benefits necessary for her support.[11]

## JURISDICTION AND VENUE

7. This case presents a federal question, and jurisdiction is proper under 28 U.S.C. § 1331. Pursuant to 5 U.S.C. § 702, sovereign immunity is waived.

8. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(2) and (e)(1) as Plaintiff Katrina Schaller is a citizen residing in this district.

## PARTIES

9. Katrina Schaller is a citizen of the United States and a resident of Guam. She is permanently disabled by myotonic dystrophy. Upon information and belief, she would qualify for SSI were it available to her as a Guam resident.

10. Defendant Nancy A. Berryhill is the Deputy Commissioner of Operations and the Acting Commissioner of the Social Security Administration.[12]

11. Defendant Social Security Administration is the federal agency responsible for administering and implementing the SSI program.[13]

---

[11] *See* 20 C.F.R. § 416.215 (1996) ("You lose your eligibility for SSI benefits for any month during all of which you are outside of the United States. If you are outside of the United States for 30 days or more in a row, you are not considered to be back in the United States until you are back for 30 days in a row. You may again be eligible for SSI benefits in the month in which the 30 days end if you continue to meet all other eligibility requirements. By United States, we mean the 50 States, the District of Columbia, and the Northern Mariana Islands.").

[12] Soc. Sec. Admin., *Nancy A. Berryhill, Acting Commissioner*, Social Security Administration, https://www.ssa.gov/agency/commissioner.html (last visited Nov. 13, 2018).

[13] *See* 42 U.S.C. § 410(i).

**GUAM: THE ORGANIC ACT AND THE BILL OF RIGHTS**

12. After the Second World War, Congress recognized the sacrifice and loyalty of the people of Guam to the United States. In considering whether Guamanians should receive citizenship, Congress announced:

> There are no more patriotic, loyal people under the American flag than the Guamanians. Guam was the only important area under United States jurisdiction which was occupied by the Japanese during World War II. Throughout the Japanese occupation Guamanians demonstrated their great loyalty and devotion to this country. Many of them endured cruel torture and performed unsurpassed acts of heroism to hasten the victorious return of the American forces. They are Americans in every sense except that they lack the fundamental rights under law and the elemental features of democratic government which other Americans enjoy. The people of Guam by their heroic loyalty in war and their long devotion and adherence to the American way of life have demonstrated in every respect that they are qualified for and deserving of United States citizenship and an increased measure of self-government under law.[14]

13. The Guam Organic Act, passed in 1950, granted American citizenship to Guam's residents and declared that Guam was an "unincorporated" territory.[15] Consistent with the holdings of the *Insular Cases*,[16] residents of unincorporated territories such as Guam are guaranteed the benefit of "'fundamental' constitutional rights,"[17] which are "natural rights, enforced in the Constitution by prohibitions

---

[14] H.R. Rep. No. 1677, at 4 (1950).

[15] Guam Organic Act, Pub. L. No. 81-630, § 3, 64 Stat. 384 (1950), *codified at* 48 U.S.C. § 1421a.

[16] *See e.g., Downes v. Bidwell*, 182 U.S. 244 (1901); *Dorr v. United States*, 195 U.S. 138, 149 (1904); see *also Balzac v. Porto Rico*, 258 U.S. 298, 309 (1922) (distinguishing between the incorporation of Alaska and the unincorporated territory of Puerto Rico).

[17] *Examining Bd. of Eng'rs. v. Flores de Otero*, 426 U.S. 572, 600 n. 30 (1976) ("It is clear…that the protections afforded by either the Due Process Clause of the Fifth Amendment or the Due Process

against interference with" and include the rights "to due process of law and to an equal protection of the law."[18]

14. Guam and its citizens also benefit directly from protections granted in the Organic Act, written by Congress to set forth a Bill of Rights for the newly-minted citizens of the island.[19] In part, the Guam Organic Act provided:

- No person shall be deprived of life, liberty, or property without due process of law.[20]
- No discrimination shall be made in Guam against any person on account of race, language, or religion, **nor shall the equal protection of the laws be denied.**[21]
- The following provisions of and amendments to the Constitution of the United States are hereby extended to Guam to the extent that they have not been previously extended to that territory and **shall have the same force and effect there as in the United States or in any State of the United States**: article I, section 9, clauses 2 and 3; article IV, section 1 and section 2, clause 1; **the first to ninth amendments inclusive**; the thirteenth amendment; **the second sentence of section 1 of the fourteenth amendment;** and the fifteenth and nineteenth amendments. **All laws enacted by Congress with respect to Guam and all laws enacted by the territorial legislature of Guam which are inconsistent with the provisions of this subsection are repealed to the extent of such inconsistency.**[22]

---

and Equal Protection Clauses of the Fourteenth Amendment apply to residents of Puerto Rico"). Puerto Rico is another unincorporated territory of the United States; s*ee also Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 7 (1982) (acknowledging that due process and equal protection were fundamental protections owed to the unincorporated territory of Puerto Rico).

[18] *Downes v. Bidwell*, 182 U.S. 244, 282 (1901).

[19] Guam Organic Act, P.L. 81-630, § 5, 64 Stat. 384 (1950), *codified at* 48 U.S.C. § 1421b.

[20] 48 U.S.C. § 1421b (e).

[21] 48 U.S.C. § 1421b (n) (emphasis added).

[22] 48 U.S.C. § 1421b (u) (emphasis added).

The Guam Organic Act thus provided its own anti-discrimination provision and equal protection guarantee, while also incorporating the equal protection and due process guarantees of the Fifth and Fourteenth Amendments.[23]

**SUPPLEMENTAL SECURITY INCOME IN GUAM**

15. The federal SSI program provides basic income to "aged, blind, or disabled individuals," who reside "in the United States," a defined term which does not include Guam, Puerto Rico, or the Virgin Islands.[24] Defendant Social Security Administration has promulgated a number of regulations in furtherance of this geographic distinction, defining Guam, Puerto Rico, and the Virgin Islands as "outside the United States."[25]

16. Congress created the SSI program to replace the prior Federal-State system of public assistance to the blind, aged, and disabled,[26] which included Old-Age Assistance, Aid to the Blind, and Aid to the Permanently and Totally Disabled,[27]

---

23 The incorporated language of the Fourteenth Amendment reads: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

24 Social Security Amendments of 1972, Pub. L. No. 92-603, § 1614 (a)(1)(B), 86 Stat. 1329, 1471-72 (1972) (defining the term "aged, blind or disabled individual" as a "resident of the United States"); § 1614(e) (defining the "United States" as "the 50 states and the District of Columbia").

25 *See, e.g.* 20 C.F.R. § 416.120(c)(10) (1997); 20 C.F.R. § 416.215 (1996); 20 C.F.R. § 416.216(a) (2005); 20 C.F.R. § 416.702 (2000); 20 C.F.R. § 416.1327(a)(1) (1986); 20 C.F.R. § 416.1603(c) (1997); 20 C.F.R. § 416.1902 (1999); 20 C.F.R. § 416.2203 (2003) (each providing an applicable regulatory definition of "State" or "United States" that included only the 50 states, D.C., and the CNMI).

26 *See* Martha Proskauer, Cong. Research Serv., Legislative History of the Supplemental Security Income (SSI) Program: 1969-1972, v (1977).

27 *See* Social Security Act of 1935, Pub. L. No. 74-271, tit. I (Grants to States for Old-Age Assistance for the Aged) (1935), *codified at* Social Security Act of 1935, 42 U.S.C. §§ 301-306; Social Security Act of 1935, tit. X (Grants to States for Aid to the Blind) *codified at* Social Security Act Amendments of 1950, 42 U.S.C. §§ 1201-1206 (1950); Social Security Act Amendments of 1950,

and constituted "essentially [s]tate programs" that operated under federal guidelines.[28] "Within the bounds of minimal Federal requirements the actual programs were designed, implemented, and administered at the discretion" of the local jurisdiction.[29] These programs resulted in low benefit levels, a multiplicity of different eligibility requirements and payment systems across jurisdictions, and burdensome requirements including liens against property and requirements that relatives take responsibility for the applicant that each "discourage[d] needy persons from seeking aid."[30] In 1972, Congress amended the Social Security Act, Pub. L. No. 92-603 ("The 1972 Amendments"), to create SSI and end the disparate patchwork of state programs for the blind, aged, and disabled.

17. Guam is left with the outdated and inadequate predecessor federal programs providing aid to the aged, blind, and permanently disabled (collectively, the "ABD" programs). Of Guam's more than 160,000 residents, approximately 20% live below the federal poverty standards.[31] In 2013, Guam's legislature estimated that approximately 24,000 residents could be eligible for SSI if Congress were to extend

---

Pub. L. No. 81-734, *codified at* Grants to States for Aid to the Permanently and Totally Disabled, 42 U.S.C. §§ 1351-1355 (1950).

[28] *2018 Annual Report of the SSI Program*, Social Security Administration, https://www.ssa.gov/oact/ssir/SSI18/III_ProgramDescription.html (last visited Nov. 13, 2018).

[29] Sylvester J. Schieber, *First Year Impact of SSI on Economic Status of 1973 Adult Assistance Populations*, 51 Soc. Sec. Bull. 19, 19 (1988).

[30] John Trout and David R. Mattson, *A 10-Year Review of the Supplemental Security Income Program*, 47 Soc. Sec. Bull. 3, 3 (1984).

[31] U.S. Census Bureau, 2010 Guam Demographic Profile Data, https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?pid=DEC_10_DPGU_GUDP3&prodType=table (last visited Nov. 27, 2018).

the program to the island.[32] Yet only about 650 individuals received aid from Guam's ABD programs in 2016.[33]

18. Guam's circumstance plainly contrasts with the CNMI, a neighboring unincorporated territory of the United States, whose residents were also granted American citizenship by Congress.[34] It is an artifact of colonialist history that Guam and the CNMI are distinct geopolitical entities.[35] Guam lies at the southern base of the the Mariana Islands chain, and the Chamorro people—among other ethnicities—were split between two jurisdictions following the Spanish-American War.[36]

19. For Guam, citizenship came through the Organic Act in 1950. For the CNMI, Congress provided a path to citizenship in a 1976 covenant that fully ripened ten years later. Moreover, Congress intentionally provided CNMI residents access to the benefits it had denied Guam: "Unlike Guam, where provisions for the needy, aged,

---

[32] Guam Res. 42-32, 32nd Sess. (2013), http://www.guamlegislature.com/COR_Res_32nd/Adopted/R042-32%20(LS).pdf

[33] Guam Bureau of Econ. Sec. Ann. Rep. 4 (2016), http://www.dphss.guam.gov/document/bes-annual-report-fy2016 (giving the number as 659); Guam Bureau of Statistics and Plans, Office of the Governor, *Guam Statistical Yearbook 327* (2016) http://bsp.guam.gov/wp-bsp-content/uploads/2018/01/GuamStatistcalYearbook_2016.pdf (giving number as 658).

[34] The population of the CNMI is approximately 52,300, and the citizen population of this territory includes many individuals of Chamorro cultural background. Dep't of the Interior, Office of Insular Affairs, Commonwealth of the Northern Mariana Islands, U.S. Department of Interior, Commonwealth of the Northern Mariana Islands, https://www.doi.gov/oia/islands/cnmi (last visited Nov. 27, 2018).

[35] S. Rep. No. 94-433, at 17 (1975). ("The separation of the Mariana Islands District (the Northern Marianas) of the Trust Territory from Guam (the southernmost island of the Marianas Chain) is an accident of modern colonial history. Geographically, culturally and ethnically, Guam and the Northern Mariana Islands are one entity.").

[36] *Id.*; *see also* Doug Herman, *A Brief, 500-Year History of Guam*, SMITHSONIAN, (Aug. 15 2017), https://www.smithsonianmag.com/smithsonian-institution/brief-500-year-history-guam-180964508/.

blind and disabled are less generous than in the States, the Northern Marianas will receive the full benefit of the Act."[37]

20. But placing the CNMI on a higher pedestal was never the long-term intention of the federal government. While the CNMI was negotiating its political status with the United States, the Ford Administration conducted a classified study ("Guam Study") assessing the future of Guam and its relationship with the United States government, as well as Guam's political relationship to the CNMI.[38] The study noted that "Guam will not be satisfied with anything less than [what] the Northern Mariana Islands get."[39] It further stated that "Guamanians are in need of reassurance that they will be treated as well as their cousins to the north. This assurance should be given them as soon as possible before the Saipan negotiations give the Guamanians further anxiety."[40] Finally, the Guam Study recommended:

> That, in order to forestall Guamanian jealousy of the Northern Marianas and to avoid unnecessary frustration or confusion which might affect U.S. negotiations in Saipan, the Governor and key Legislators in Guam be informed promptly, though informally, that the United States wants Guam to have a status and arrangements no less favorable than those which will obtain in the Northern Marianas and that the Federal Government will be ready to entertain Guamanian

---

[37] *To Approve "The Covenant to Establish a Commonwealth of the Northern Mariana Islands," and for Other Purposes: Hearing Before the Subcomm. on Terr. and Insular Affairs of the H. Comm. on Interior and Insular Affairs*, 94th Cong. 641 (1975) (Section-by-Section Analysis of the Covenant to Establish a Commonwealth of the Northern Mariana Islands) (referring to Title XVI of the Social Security Act).

[38] National Security Council, *Guam Study* (1974). This secret "Guam Study" was was conducted in 1973-1974 by a federal interagency working group. The study was declassified on June 26, 2003.

[39] *Id.* at 184.

[40] *Id.* at 187-88.

views regarding future arrangements as soon as Guam is prepared to present them.[41]

21. The Ford Administration agreed with the Guam Study's recommendation, having every intention of placing Guam on equal footing as the CNMI. But despite the Ford Administration's intentions of following the Guam Study's recommendation, Guam has not been granted equal status to the CNMI under the SSI statute or its accompanying regulations. Such unequal treatment was irrational in the 1970s, and it remains irrational today.

22. A 1987 Government Accountability Office report, with calculations based on the CNMI's experience with SSI,[42] estimated that SSI application to the eligible residents of Guam would result in 1,500 additional recipients and the maximum available monthly benefit would expand by more than 500%.[43] The GAO did not conduct this study by chance. Rather, it was released two years after the Guam legislature petitioned Congress in 1985:

> [T]he residents of the Commonwealth of the Northern Marianas are now receiving the full benefits of the Supplemental Security Income program as a result of their present political status; and the people of Guam firmly believe in the right to equal treatment of any resident or citizen of the United States to the benefits available to

41 *Id.* at 188.

42 U.S. Gov't Accountability Office, GAO/HRD-87-60, Welfare and Taxes: Extending Benefits and Taxes to Puerto Rico, Virgin Islands, Guam, and American Samoa 112 (1987) ("[W]e based our estimates on actual SSI experience in the Northern Mariana Islands.").

43 *Id.* at 44 ("Guam's maximum monthly adult assistance benefit levels of $60 for one person and $120 for two would have been be replaced with SSI's levels of $314 for one person and $472 for couples.").

> them from the United States Federal Government without regard to geographical remoteness or boundaries.[44]

23. The Guamanian ABD programs are not comparable to SSI. Guam's Bureau of Economic Security administers the programs, which have different eligibility requirements from the national uniform standard. The programs' rules greatly restrict what an ABD-eligible individual can own, limiting individual aid recipients to $2,000 in resources, including personal and real property.[45] Guam counts the home in which a potential recipient lives, as well as her land, immoveable fixtures, the cash value of insurance policies, and the value of a car beyond its first $1,500 *against* the resource test for public assistance applicants.[46] By contrast, the federal SSI program penalizes applicants for none of these property interests.[47]

24. Guam's ABD programs also provide dramatically lower benefit amounts than the federal SSI program. Within the ABD programs, the government of Guam distributed an average monthly benefit of $174.21 for 256 recipients of old-age assistance, $162.14 per month for the 354 recipients who were totally disabled, and

---

[44] *Id.* at 47.

[45] 26 Guam Admin. R. & Regs. § 1832(h)(1) (1997) ("The resource reserve limit for all Adult programs is **$2,000** for each individual recipient.") (emphasis in original).

[46] *Id* at § 1832(h)(2)(B). Pursuant to 26 Guam Admin. R. & Regs. § 1832(h)(2)(B), real property is excluded for the aged and disabled when the applicant for aid lives in the home. This exclusion, and other "Earned Income Disregards" in that subsection, do not apply to aid for the blind. One of these "Earned Income Disregards" for the aged and disabled is for one (and only one) burial plot and funeral not to exceed a value of $1,500 per family member.

[47] Soc. Sec. Admin., *A Guide to Supplemental Security Income (SSI) for Groups and Organizations*, 14-16 (2018), https://www.ssa.gov/pubs/EN-05-11015.pdf. While SSI's resource test is also $2,000 for individuals ($3,000 for couples), it is far more generous than Guam's test, especially for individuals who are blind.

$296 per month for one recipient of aid to the blind.[48] Collectively, the average monthly payment for the ABD programs was $167.41 per individual.[49] The federal SSI program pays a monthly benefit of up to $771 per eligible individual,[50] with an average payment of $526 per month.[51] In 2015, the average payment to an SSI recipient in the CNMI was $638.92.[52] Thus, geographic fortune deprives Americans living at the southern tip of the Mariana Islands from approximately 75% of the federal benefits received by those living just to the north.

25. Unlike SSI, the ABD programs require territories to pay a significant portion of the benefits to their citizens. Under SSI, the federal government pays 100% of each beneficiary's support; the federal government pays only 75% of Guam's ABD.[53] Unlike the CNMI, Guam must turn to its own treasury to pay for the final 25% of each ABD recipient's entitlement. This system disincentivizes the territorial government from adding anyone to the ABD rolls, despite the program's stated goals of aiding the aged, blind, and permanently disabled. Between 2007 and 2016,

---

[48] *Guam Statistical Yearbook* 327 (2016), http://bsp.guam.gov/wp-bsp-content/uploads/2018/01/GuamStatistcalYearbook_2016.pdf (Using FY2015 numbers).

[49] Using FY2015 numbers for the total dollars disbursed in the programs for the blind, aged, and disabled ($102,289) divided by the total recipients for those programs (611).

[50] Soc. Sec. Admin., *SSI Federal Payment Amounts For 2018*, https://www.ssa.gov/oact/cola/SSI.html.

[51] Soc. Sec. Admin. Ann. Rep. of the Supplemental Sec. Income Program 2 (2017) (using Jan. 2017 numbers).

[52] Soc. Sec. Admin., *Northern Mariana Islands - Congressional Statistics, 2017 (2018)*, https://www.ssa.gov/policy/docs/factsheets/cong_stats/2017/mp.pdf (calculating the average based on $660,000 in total spending for 1,033 recipients of SSI).

[53] Social Security Act, 42 U.S.C. § 1318; *see also* Social Security Act, 42 U.S.C. § 1383 note (describing the prior requirement that Guam, Puerto Rico, and the Virgin Islands were required to spend 50% of each dollar provided to beneficiaries).

participation in Guam's ABD programs averaged 480 individuals, with a maximum of 611 in 2015.[54] By contrast, 2015 SSI participation in the CNMI—comprising one-third of Guam's population—was 1,033 individuals.[55] Nearly 70% more individuals receive aid in the much smaller CNMI when the federal government shoulders 100% of SSI costs. Blind, aged, and disabled residents of Guam are left with an inadequate program, if they receive any aid at all.

26. Not only does the federal government limit its *proportion* of spending on Guam's ABD aid, it also caps its *total* monetary contribution to Guamanian aid programs.[56] In 1997, Congress set the ceiling at $4,686,000, including a block grant of $3,465,478 for Temporary Aid for Needy Families.[57] All Guamanian adult assistance programs—including ABD, foster care, adoption assistance, and § 1108 matching grant programs—were limited to the remaining $1,220,522.[58] Congress set this ceiling by statute in nominal terms, without any adjustment for inflation or growth over time, and the total amount of funds available for adult assistance programs other than Medicaid has stagnated for two decades.

---

[54] *Guam Statistical Yearbook* 327 (2016), http://bsp.guam.gov/wp-bsp-content/uploads/2018/01/GuamStatistcalYearbook_2016.pdf.

[55] Soc. Sec. Admin., Northern Mariana Islands - Congressional Statistics 2015 (Dec. 2015), https://www.ssa.gov/policy/docs/factsheets/cong_stats/2015/mp.pdf.

[56] Social Security Act, 42 U.S.C. § 1308 (detailing maximum ceiling amounts for each territory).

[57] *Id.*

[58] *Id. See also* William R. Morton, Congressional Research Service, *Cash Assistance for the Aged, Blind, and Disabled in Puerto Rico*, at 7-8 (Oct. 26, 2016), https://fas.org/sgp/crs/row/cash-aged-pr.pdf ("Assuming full funding of the basic TANF block grant, the amount of the [territory's statutory funding] cap available for adult assistance and other specified programs is equal to the cap *minus* the TANF block grant") (emphasis in original).

27. With different eligibility requirements and no funding cap, many more individuals would qualify for SSI than Guam's inadequate ABD program.[59] If available, Katrina Schaller would qualify for SSI—as her twin sister does in Pennsylvania—and she would receive significantly more benefits than Guam's ABD provides.

28. Although Americans on Guam cannot receive SSI, from inception the program has not limited its benefits to citizens.[60] Subsequent to the 1972 Amendments, Congress separately established SSI eligibility for specific groups of non-citizens,[61] including non-citizens with a military connection—active duty military members, veterans, and their dependents and spouses—who are eligible for SSI if they live in a "state."[62] As used in this distinct provision of the U.S. Code,

---

[59] In 1987, the GAO estimated that 1,500 additional individuals would qualify for and receive much-needed assistance, and each individual recipient would receive higher benefit levels. U.S. Gov't Accountability Office, GAO/HRD-87-60, Extending Benefits and Taxes to Puerto Rico, Virgin Islands, Guam, and American Samoa at 44 (1987). Using the GAO method of extrapolating from the CNMI's experience with SSI, a reasonable estimate of potential SSI recipients on Guam would be the same per capita rate as in the CNMI, 1.975%, or approximately 3,160 total recipients.

[60] 1972 Amendments, § 1614(a)(1)(B) (defining an "aged, blind, or disabled individual" as "a resident of the United States" who is either a citizen or permanent resident).

[61] *See* Social Security Administration, *Supplemental Security Income for Noncitizens*, Pub. No. 05-11051 (August 2017); *see also Personal Responsibility and Work Opportunity Reconciliation Act of 1996,* Pub. L. 104-193, §§ 401-02, 110 Stat. 2261-62, *codified at* 8 U.S.C. §§ 1611-12, prohibiting SSI eligibility for non-citizens unless they are a "qualified alien" and meet certain exceptions. *See generally* Social Security Administration, *SSI: History of Provisions*, 18-19 (2000). https://www.ssa.gov/history/pdf/ssi.pdf (providing a legislative history of citizenship and residence eligibility criteria in SSI from 1972-2000).

[62] 8 U.S.C. § 1612(a)(2)(C).

"state" includes Guam, Puerto Rico, and the U.S. Virgin Islands, in addition to the fifty U.S. states, the District of Columbia, and the CNMI.[63]

29. Guam has a large military presence, including nearly 13,000 individuals on active duty and their dependents, as well as over 4,000 veterans.[64] Thus, the government facilitates an illogical system in which non-citizen service members stationed on Guam and non-citizen veterans who move there—as well as either of their families—are all eligible for SSI, but Guamanian citizen-veterans who move home from the mainland United States are categorically ineligible.

## EQUAL PROTECTION IN GUAM

30. The Constitution's guarantee of "equal protection under law," enshrined in the Fifth and Fourteenth Amendments, extends to Guam because (a) the protection is a "fundamental" right that applies to unincorporated territories;[65] (b) the Guam Organic Act created an original right to equal protection under law;[66] and (c) the

---

[63] 8 U.S.C. § 1101(a)(36).

[64] *Guam Statistical Yearbook* 137 & 270 (2016), http://bsp.guam.gov/wp-bsp-content/uploads/2018/01/GuamStatistcalYearbook_2016.pdf

[65] *Downes v. Bidwell*, 182 U.S. 244, 282 (1901); *see also Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 7 (1982) ("It is not disputed that the fundamental protections of the United States Constitution extend to the inhabitants of [the unincorporated territory of] Puerto Rico. In particular, we have held that Puerto Rico is subject to the constitutional guarantees of due process and equal protection of the laws.").

[66] 48 U.S.C. § 1421b (n).

Guam Organic Act expressly provides that the Fifth and Fourteenth Amendments, in relevant part, apply to Guam.[67]

31. Congressional authority under the Territory Clause is not absolute.[68] The Constitutional provision of Congress's power under the Territory Clause is subject to the limitations on the government's power found elsewhere in the Constitution, such as the Fifth and Fourteenth Amendments. Although the government has wide latitude to to craft social welfare laws as it sees fit, the Fifth and Fourteen Amendments demand that such "laws and regulations must still 'be rationally based and free from invidious discrimination.'"[69]

32. Guam and the CNMI rest at opposite ends of the same chain of islands, whose residents are separated by as few as sixty miles. The two territories' respective political relationships to the United States government are indistinguishable. Yet residents of the CNMI qualify for SSI, while their brothers and sisters in Guam do not. When *Califano v. Torres, 435 U.S. 1 (1978)* was decided, there was a clear line between territories and States for SSI purposes. Now that the CNMI enjoys State-like status under the SSI statute, an arbitrary line drawn between two indistinguishable unincorporated territories is indefensible, as these facts "preclude the assumption" that the decision to grant SSI benefits to one unincorporated

---

[67] 48 U.S.C. § 1421b (u); *see also Bunyan v. Camacho*, 770 F.2d 773, 775-76 (9th Cir. 1985) (striking down a Guam statute that distinguished between classes of bona fide residents as unconstitutional, as it violated the Fourteenth Amendment).

[68] U.S. Const. art. IV, § 3, cl. 2.

[69] *Hagans v. Lavine*, 415 U.S. 528, 539 (1974) (quoting *Dandridge v. Williams*, 397 U.S. 471, 487 (1970)).

territory and not its neighbor "rests upon some rational basis within the knowledge and experience of the legislators."[70]

**COUNT I - VIOLATION OF EQUAL PROTECTION BY EXCLUSION FROM SSI BENEFITS**

33. Plaintiff incorporates the allegations in each preceding paragraph.

34. SSI provides benefits to low-income individuals who meet eligibility requirements, including income tests and inability to work.

35. U.S. citizens who are otherwise eligible for SSI benefits are categorically excluded from the SSI program solely because they live on Guam.

36. The U.S. Constitution provides all U.S. citizens, including those on Guam, equal protection of the laws, enforceable against the federal government through the Fifth and Fourteenth Amendments.

37. The SSI statute facially discriminates against citizen residents of Guam by denying SSI benefits to otherwise eligible citizen residents, including Plaintiff, a U.S. citizen residing in Guam.

38. Instead of SSI, the federal government provides funds for Guam's territorial program for the aged, blind, and permanently disabled. Funds are capped under this program, and benefits are substantially lower than under SSI. Federal funding of this program does not obviate the facial discrimination citizen residents of Guam experience, as they are categorically ineligible for a uniform federal program available to residents of the fifty States, the District of Columbia, and the CNMI.

---

[70] *United States v. Carolene Products Co.*, 304 U.S. 144, 152 (1938).

39. The federal statute and the implementing regulations, promulgated by Defendants, unjustly discriminate against Plaintiff. The government cannot maintain such discriminatory treatment, even on the minimal requirements of rational basis review.

40. Accordingly, Plaintiff is entitled to a declaration that the discriminatory provisions of the SSI statute and any related implementing regulations are unconstitutional.

41. Plaintiff is additionally entitled to an injunction that both enjoins Defendants from enforcing the unconstitutional provisions of the SSI statute and its accompanying regulations, and that compels equal treatment under SSI for citizens living on Guam to those citizens living in the fifty States, the District of Columbia, and the CNMI.

42. Plaintiff does not seek additional appropriation to Guam of SSI funds, but instead that the existing funds appropriated for SSI be distributed in a manner that does not discriminate against citizens living in Guam compared to those living in the fifty States, the District of Columbia, and the CNMI.

**COUNT II - VIOLATION OF THE GUAM ORGANIC ACT**

43. Plaintiff incorporates the allegations in the preceding paragraphs.

44. The Guam Organic Act is a federal statute that provides a bill of rights for citizens on Guam. This bill of rights, 48 U.S.C. § 1421b, includes the rights to equal protection under law and due process of law. In addition, the Guam Organic Act incorporates relevant parts of the Fifth and Fourteenth Amendments.

45. The facial discrimination of citizens based on where they reside violates the Guam Organic Act's provisions incorporating federal constitutional protection and establishing its own analogous statutory protection of equal protection under the bill of rights, 48 U.S.C. § 1421b(n).

46. The separate eligibility and benefit standards provided for U.S. citizens in Guam compared to those residing elsewhere in the statutorily-defined "United States" in the SSI program constitute facial discrimination and violate equal protection guarantees of the Guam Organic Act. These standards have discriminated against Plaintiff Katrina Schaller—a bona fide Guam resident who is also a U.S. citizen.

47. Because the disparate standards applied to Guam residents violates the Organic Act's guarantees of Equal Protection, Plaintiff is entitled to a declaration that the discriminatory provisions of the SSI statute and any related implementing regulations must fail.

48. Plaintiff is additionally entitled to an injunction that both enjoins Defendants from enforcing the unlawful provisions of the SSI statute and its accompanying regulations, and that compels equal treatment under SSI for citizens living on Guam to those citizens living in the fifty States, the District of Columbia, and the CNMI.

49. Plaintiff does not seek additional appropriation to Guam of SSI funds, but instead that the existing funds appropriated for SSI be distributed in a manner

that does not discriminate against citizens living in Guam compared to those living in the fifty States, the District of Columbia, and the CNMI.

**PRAYER FOR RELIEF**

For the reasons provided above, Plaintiff requests judgment be entered in her favor that:

- A declaration finding that the discriminatory provisions of the SSI statute and any related implementing regulations that discriminate on the basis of status as a resident of Guam are unconstitutional as violative of the Constitution's guarantees of Equal Protection;
- A declaration finding that the discriminatory provisions of the SSI statute and any implementing regulations that discriminate on the basis of status as a resident of Guam fail under the Guam Organic Act, 48 U.S.C. § 1421b.
- An injunction enjoining defendants from enforcing such discriminatory provisions of the SSI statute and any relevant implementing regulations;
- Awards of costs; and
- Such additional relief as the Court finds proper.

Respectfully submitted, Dated: December 6, 2018

By:
/s/ Rodney J. Jacob
Rodney J. Jacob *
RJacob@calvofisher.com
CALVO FISHER & JACOB LLP
259 Martyr Street
Suite 100
Hagatna, Guam 96910
Telephone: +1 671 646 9355
Facsimile: +1 671 646 9403

* *Counsel of Record for Plaintiff Guardians of Katrina Schaller*