# DISTRICT COURT OF GUAM

KATRINA SCHALLER, by and through her legal guardians KIMBERLY A. FEGURGUR and JOHN A. FEGURGUR,

Plaintiff,

vs.

U.S. SOCIAL SECURITY ADMINISTRATION and

ANDREW M. SAUL, in his official capacity as Commissioner of Social Security Administration

Defendants.

CIVIL CASE NO. 18-00044

**ORDER**
1. Denying Defendants' Motion to Dismiss for Lack of Jurisdiction;
2. Granting Plaintiff's Motion for Summary Judgment; and
3. Denying Defendants' Cross Motion for Summary Judgment.

In this action, Plaintiff, a Guam resident, challenges the Defendants' refusal to grant her Supplemental Social Security benefits established under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, and asserts that said refusal violates the equal protection clause of the Fifth and Fourteenth Amendments of the U.S. Constitution and the Organic Act of Guam, 48 U.S.C. § 1421b.

Pending before the court are the following motions: (1) Defendants' Motion to Dismiss for Lack of Jurisdiction, ECF No. 22; (2) Plaintiff's Motion for Summary Judgment, ECF No. 39; and (3) Defendants' Cross Motion for Summary Judgment, ECF No. 46. The court heard argument on said motions and thereafter took the matters under advisement. The court ordered further briefing on certain issues after the Court of Appeals for the First Circuit issued its decision in *United States v. Vaello-Madero*, 956 F.3d 12 (1st Cir. 2020). *See* Order, ECF No. 73. Having reviewed relevant case law and the parties' filings, the court hereby issues this Order DENYING the Defendants'

Motion to Dismiss and Cross Motion for Summary Judgment and GRANTING the Plaintiff's Motion for Summary Judgment.

**I.     BACKGROUND**:

  A. Jurisdiction and Venue

The Complaint, filed on December 6, 2018, asserts that the case presents a federal question, and thus jurisdiction is proper under 28 U.S.C. § 1331. Additionally, because the Plaintiff is a citizen residing in Guam, venue is proper in this district. *See* Compl. at ¶¶7-8.

  B. Statutory Framework

The Social Security Administration ("SSA") administers two primary programs that provide benefits to aged persons, blind persons, and persons with disabilities who meet certain income and resource requirements. At issue here is the Supplemental Security Income ("SSI") program, established by Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* Congress created the SSI program "[f]or the purpose of establishing a *national* program to provide supplemental security income to individuals who have attained age 65 or are blind or disabled." *Id.* at 1381 (emphasis added). SSI benefits are paid from the general revenues that are funded by federal income taxes. The statute as enacted provided that eligibility for SSI benefits was limited to individuals residing inside the "United States," which, by definition, meant "the 50 States and the District of Columbia." 42 U.S.C. § 1382c(e). Residents of the U.S. territories were not included in this definition, however, in 1976 Congress made SSI benefits available to residents of the CNMI by virtue of a joint resolution which approved the CNMI's political union with the United States.[1]

  C. Factual Background

Plaintiff Katrina Schaller and her 50-year old twin sister Leslie were born on January 25, 1970, and grew up in Pennsylvania with their parents and older sister Kim. Compl. at ¶5. After their parents separated, Plaintiff moved to live with her mother. *Id.* Plaintiff applied for and

---

[1] *See* Covenant to Establish a Commonwealth of the Northern Mariana Islands, Pub. L. No. 94-241, §502(A)(1), 90 Stat. 263, 268 (1976) (codified at 48 U.S.C. § 1801 *et seq.*) ("The following laws of the United States . . . will apply to the [CNMI] . . . Title XVI of the Social Security Act as it applies to the several states[.]").

received SSI benefits after the SSA determined she was disabled on August 28, 2001. Decl. K. Fegurgur at ¶5 attached as Ex. 1 to Pl.'s Concise Stmnt., ECF No. 41.

After her mother's death in October 2007, Plaintiff moved to Guam temporarily to live with her sister Kim and Kim's husband John Fegurgur, who are Plaintiff's legal guardians. *Id.* 7 and Compl. at ¶5, ECF No. 1. Before leaving for Guam, the Plaintiff and Kim visited the SSA office in Washington, Pennsylvania to inquire if it was still possible for the Plaintiff to receive SSI coverage in Guam. Decl. K. Fegurgur at ¶7, ECF No. 41. An SSA officer informed them that if and when the Plaintiff leaves the covered geography of the United States for over 30 days, her SSI benefits would be lost. *Id.* The SSA agent confirmed that Guam was not part of the covered geography of the United States for citizens to receive SSI benefits. *Id.* The Plaintiff's SSI benefits stopped while she was on Guam. *Id.*

The Plaintiff and her sister Kim returned to Pennsylvania in 2008, and the Plaintiff's SSI benefits resumed while they were in Pennsylvania. Decl. K. Fegurgur at ¶8, ECF No. 41. When the Plaintiff permanently moved to Guam in 2008, her SSI benefits were again terminated, and she has not received any such payments since. *Id.* at ¶10.

Plaintiff and twin sister Leslie both suffer from "myotonic dystrophy, a debilitating, degenerative genetic disorder affecting muscle function and mental processing." Compl. at ¶5, ECF No. 1. This disorder inhibits some aspects of Leslie's mobility, but she otherwise leads a full, independent life in Pennsylvania based in part on the monthly SSI payments (about $755) she receives because she lives in the "United States." *Id.* On the other hand, Plaintiff Katrina "lacks the functionality to perform many activities of daily living, let alone earn a steady income, and is permanently disabled." *Id.* As noted, Plaintiff stopped receiving SSI benefits when she permanently moved to Guam 12 years ago in 2008.

On December 6, 2018, this suit was initiated on the Plaintiff's behalf because her legal guardians believed "SSI benefits could significantly improve her quality of life as soon as Katrina starts receiving them." Decl. K. Fegurgur at ¶12, ECF No. 41. The Complaint asserts Equal Protection claims under the Fifth and Fourteenth Amendments and the Organic Act of Guam. The Plaintiff essentially claims that the Government violated the equal protection clause by terminating

her SSI benefits based solely on her residency on Guam, while similarly situated citizens in the CNMI are afforded those same benefits. *See* Compl. at ¶¶5-6, 15.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1) - Lack of Jurisdiction

Defendants move to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), asserting that the Complaint fails to allege that Plaintiff presented her claims to the Commissioner of Social Security and received the Commissioner's final decision before bringing suit. Rule 12(b)(1) allows the court to dismiss a claim for lack of jurisdiction. "It is a fundamental principle that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Thus, the plaintiff bears the burden of establishing subject matter jurisdiction. Federal subject matter jurisdiction must exist at the time the action is commenced. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). A court must presume lack of jurisdiction until the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (The party seeking to invoke federal court jurisdiction has the burden of establishing that jurisdiction is proper.).

A party bringing a Rule 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual"). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In evaluating a facial attack to jurisdiction, the court must accept the factual allegations of the complaint as true. *See Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014). However, legal conclusions in the complaint are not accepted as true, even if they are cast as factual allegations. *See id.*

### B. Rule 12(b)(6) - Failure to State a Claim

Defendants' Motion to Dismiss also asserts that the Complaint fails to state a claim on which relief can be granted. A defendant is entitled to dismissal under Rule 12(b)(6) when a

complaint fails to state a cognizable legal theory or alleges insufficient facts under a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). The Ninth Circuit has explained that the purpose of a Rule 12(b)(6) motion is to test a complaint's legal sufficiency, not to decide its merits. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Generally, the plaintiff's burden at this stage is light since Rule 8(a) requires only that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). The court may dismiss based on lack of cognizable legal theory or on the absence of facts that would support a cognizable theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). And, while the plaintiff's burden is light, it is not nonexistent – the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The court must "draw on its judicial experience and common sense" to determine the plausibility of a claim given the specific context of each case. *Id.* at 679.

C. <u>Motions for Summary Judgment</u>

The parties have also filed competing summary judgment motions. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v.*

*City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55, (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).

## III.  DISCUSSION

### A.  Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants move to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), asserting that the Complaint fails to allege that Plaintiff presented her claims to the Commissioner of Social Security and received the Commissioner's final decision before bringing suit. As noted in the Defendants' motion, the Social Security Act expressly provides that 42 U.S.C. § 405(g) is the exclusive jurisdictional basis for a claimant seeking judicial review of claims arising under the Act. 42 U.S.C. § 405(g) and (h). The Supreme Court has stated that §405(g) "consists of a nonwaivable requirement that a claim for benefits shall have been presented to the Secretary, and a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant." *Heckler v. Ringer*, 466 U.S. 602, 617 (1984) (quotation marks and citation excluded).

In her Opposition, the Plaintiff rebuts the Defendants' allegations that she failed to present her claims to the SSA. The Plaintiff notes that she met the presentment requirement twice – first, when she initially applied to the SSA to qualify for benefits in Pennsylvania; second when she notified the SSA that she would be temporarily and then permanently moving to Guam, prompting the SSA to terminate her benefits each time. *See* Decl. K. Fegurgur at ¶5, 7-10, attached as Ex. 1 to Pl.'s Concise Stmnt., ECF No. 41. With regard to exhausting administrative remedies, the Plaintiff asks the court to waive this requirement because it would have been futile for her to have appealed the SSA's decision to terminate her SSI benefits when she moved to Guam.

The Defendants, in their Reply brief, have conceded this issue. *See* Reply at 2, n.1, ECF No. 45. After having read the Declaration of Kimberly Fegurgur with regard to her meeting with SSA about the Plaintiff's plan to move to Guam, the Defendants "are no longer challenging the subject matter jurisdiction of this [c]ourt[.]" *Id.* Counsel for the Defendants reaffirmed this

position at the hearing on the motions. In light of this concession, the court hereby denies the Motion to Dismiss insofar as it asserts this court lacks subject matter jurisdiction.

B. Defendants' Motion to Dismiss for Failure to State a Claim

The Defendants next contend that dismissal is warranted because the Complaint fails to state a claim on which relief can be granted since the Supreme Court of the United States has already stated that Congress may limit eligibility for the SSI programs to residents of the 50 states and the District of Columbia. *See Califano v. Gautier Torres*,[2] 435 U.S. 1 (1978). In *Gautier Torres*, a recipient who qualified for SSI benefits while residing in Connecticut but had his benefits discontinued when he moved to Puerto Rico brought an action in the District Court of Puerto Rico claiming that the exclusion of Puerto Rico from the SSI program was unconstitutional. *Id.* at 2-3. A three-judge court was convened and ultimately found the statute unconstitutional as applied to Gautier Torres because it interfered with his right to travel. *Id.* at 3. Two others individuals (Colon and Vega) also brought similar suits, and, based on the earlier decision, the district judge enjoined the SSA from discontinuing said individuals' SSI benefits on the basis of their change of residency to Puerto Rico. *Id.* The government appealed, and the Supreme Court reversed.

The Supreme Court in *Gautier Torres* primarily addressed the right to travel claim but noted in a footnote that the appellee Torres's

> complaint had also relied on the equal protection component of the Due Process Clause of the Fifth Amendment in attacking the exclusion of Puerto Rico from the SSI program. Acceptance of that claim would have meant that all otherwise qualified persons in Puerto Rico are entitled to SSI benefits, not just those who received such benefits before moving to Puerto Rico. But the District Court apparently acknowledged that Congress has the power to treat Puerto Rico differently, and that every federal program does not have to be extended to it.

*Gautier Torres*, 435 U.S. at 3, n.4.

The Supreme Court instructed that when faced with a constitutional attack on a law providing for governmental payments of monetary benefits, such "statute is entitled to a strong

---

[2] The parties have referred to this case in their briefs as the *Torres* case. "According to Spanish naming conventions, if a person has two surnames, the first (which is the father's last name) is primary and the second (which is the mother's maiden name) is subordinate." *United States v. Martínez-Benítez*, 914 F.3d 1, 2 n.1 (1st Cir. 2019). The court's decision will refer to this case using both surnames.

presumption of constitutionality. So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket." *Id.* at 5 (quotation marks and citations omitted). The Supreme Court further noted that

> [a]t least three reasons have been advanced to explain the exclusion of persons in Puerto Rico from the SSI program. First, because of the unique tax status of Puerto Rico, its residents do not contribute to the public treasury. Second, the cost of including Puerto Rico would be extremely great . . . . Third, inclusion in the SSI program might seriously disrupt the Puerto Rican economy.

*Id.* at 5, n.7.

Two years later, the Supreme Court decided the case of *Harris v. Rosario*, 446 U.S. 651 (1980), which dealt with another federal program – the Aid to Families with Dependent Children ("AFDC") program, which provides financial assistance to states and Territories to aid families with needy dependent children. *Id.* AFDC recipients residing in Puerto Rico had filed a class action against the Secretary of Health and Human Services challenging the constitutionality of certain provisions of the program, "claiming successfully that the lower level of AFDC reimbursement provided to Puerto Rico violates the Fifth Amendment's equal protection guarantee." *Id.* The Supreme Court, relying on *Gautier Torres*, disagreed, stating:

> Congress, which is empowered under the Territory Clause of the Constitution, U.S. Const., Art. IV, § 3, cl. 2, to "make all needful Rules and Regulations respecting the Territory . . . belonging to the United States," may treat Puerto Rico differently from States so long as there is a rational basis for its actions. In [*Gautier Torres*], we concluded that a similar statutory classification was rationally grounded on three factors: Puerto Rican residents do not contribute to the federal treasury; the cost of treating Puerto Rico as a State under the statute would be high; and greater benefits could disrupt the Puerto Rican economy. These same considerations are forwarded here in support of §§ 1308 and 1396d(b) . . . and we see no reason to depart from our conclusion in *[Gautier] Torres* that they suffice to form a rational basis for the challenged statutory classification.

*Harris*, 446 U.S. at 651-52 (internal citations omitted).

Based on these precedents, the Defendants contend that the Complaint fails to state a claim upon which relief can be granted. The Defendants assert that the Plaintiff's equal protection claims have no merit because the Supreme Court has made it abundantly clear that Congress may limit eligibility for SSI benefits to residents of the 50 states and the District of Columbia.

The Plaintiff, on the other hand, argues that reliance on *Gautier Torres* and *Harris* is

misplaced. The Plaintiff notes that her Complaint alleges the Government violated her right to Equal Protection when "Congress intentionally provided CNMI residents access to the benefits it had denied Guam." Compl. at ¶19. The Plaintiff here challenges what she claims is an irrational line-drawing between CNMI and Guam, *not* between Guam and the 50 States. The Plaintiff asserts *Gautier Torres* and *Harris* are not controlling to the facts herein since said cases dealt with disparate treatment between the Territories and the 50 States, whereas the Plaintiff's claims focus on the differential treatment she experienced as a U.S. citizen on Guam compared to similarly situated citizens in the CNMI.

Plaintiff contends that she has appropriately pled Equal Protection claims. To state an Equal Protection claim, a plaintiff must allege that (1) she is a member of an identifiable class, (2) the defendant treated her differently from other similarly situated persons, and (3) the defendant acted with an intent or purpose to discriminate against her based on her membership in the identifiable class. *See Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003). Here, the Plaintiff's Complaint sufficiently pleads that she is a U.S. citizen residing on Guam. Compl. at ¶¶1 and 9. The Complaint also asserts that Plaintiff qualified for and received SSI benefits due to her financial status and hereditary medical disorder, that she continues to suffer from this disorder, but her benefits were terminated when she moved to Guam. *Id.* at ¶¶1, 6 and 9. Finally, the Complaint asserts that the Government has expressly and therefore intentionally excluded Guam but not the CNMI from the definition of the "United States" under the SSI program. *Id.* at ¶¶1-2, 6, 9 and 15.

The court concurs with the Plaintiff that her Complaint alleges "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. And, as noted previously, the purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Navarro*, 250 F.3d at 732. The *Gautier Torres* and *Harris* cases are factually distinguishable from the Plaintiff's claims, such that this court can not conclude – at least at the motion to dismiss stage – that these cases *require* dismissal. As noted above, *Gautier Torres* was not decided on equal protection grounds. Even Defendants acknowledge that *Gautier Torres* "primarily involved a right-to-travel claim[.]" Defs.' Resp. to Pl.'s Suppl. Br. at 3,

ECF No. 75. Additionally, *Harris* involved an equal protection challenge to the lower level of reimbursement provided to Puerto Rico under the AFDC program, not the SSI program. Accordingly, the court denies the Rule 12(b)(6) motion as the Plaintiff has adequately alleged Equal Protection claims.[3]

C. Plaintiff's Motion for Summary Judgment and Defendants' Cross Motion

Plaintiff asserts the exclusion of Guam from the SSI program violates the Equal Protection clause under the Fifth Amendment and the Organic Act of Guam. "Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment." *Buckley v. Valeo*, 424 U.S. 1, 93 (1976). "[L]egislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 440 (1985). The burden is on the party attacking the legislation "to negate every conceivable basis which might support it." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1988)); *see also Hernandez-Mancilla v. Holder*, 633 F.3d 1182, 1185 (9th Cir. 2011). The parties agree that rational basis review applies.

The Defendants have proffered various grounds for Guam's exclusion from the SSI program. First, just as in *Gautier Torres and Harris*, the Defendants contend that Guam's "unique tax status" justifies the limitation at issue here. *See* Defs.' Combined Mem. in Supp. of Cross Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. at 7, ECF No. 47. The Defendants assert that SSI benefits are paid from general revenues that are funded by federal income taxes, and because Guam (and Puerto Rico) residents generally do not pay federal income tax, it was logical to limit SSI benefits to residents of the fifty States and the District of Columbia. *Id.* at 7-8.

Plaintiff rebuts this basis and asserts that "U.S. citizens residing in CNMI and Guam have the same relationship with federal income tax – neither group pays it." Pl.'s Combined Mem. in

---

[3] The remaining arguments raised in the Motion to Dismiss, the Opposition and the Reply addressing the merits of whether there are or are not rational bases to treat the CNMI differently from Guam under the SSI program are better reserved for the summary judgment stage and will be addressed by the court in the section below.

Opp'n to Defs.' Mot. for Summ. J. and Reply in Supp. of Pl.'s Mot. for Summ. J. at 14, ECF No. 51. Because Guam's tax status is not "unique" when compared to the CNMI, the Plaintiff contends that the Defendants' tax status argument has not merit.

The court agrees with the Plaintiff. While Guam's tax status might explain why it is treated differently from the fifty States and the District of Columbia, it does not justify the distinction in treatment between Guam and the CNMI with regard to SSI benefits. Guam's tax status is not unique when contrasted with the tax status of the CNMI. The parties do not dispute that neither Guam nor the CNMI pay federal income taxes. Yet, the U.S. citizens in the CNMI residents are eligible for SSI benefits that are withheld from U.S. citizens residing in Guam. This proffered reason to justify Guam's exclusion from the SSI program when the CNMI is included is illogical and irrational.

Additionally, because SSI benefits are not dependent on an individual's contributions, it would appear irrational for Congress to limit SSI benefits to exclude populations that do not pay federal income taxes. As the First Circuit reasoned in *United States v. Vaello-Madero ("Vaello-Madero II")*,

> We are unaware of . . . any instance where the government has justified the exclusion of a class of people from welfare payments (which are untied to income tax receipts) because they do not pay federal income tax. . . . [T]he sort of welfare benefits at issue here are distinguishable from federal insurance programs, like Social Security Disability Insurance, which may legitimately tie the amount of benefits [awarded] to the individual's contributions. . . . However, because SSI is a means-tested program, by its very terms, only low-income individuals lacking in monetary resources are eligible for the program. . . . Consequently, any individual eligible for SSI benefits almost by definition earns too little to be paying federal income taxes. Thus, the idea that one needs to earn their eligibility by the payment of federal income tax is antithetical to the entire premise of the program. How can it be rational for Congress to limit SSI benefits to exclude populations that generally do not pay federal income taxes when the very population those benefits target do not, as a general matter, pay federal income tax?

*Vaello-Madero II*, 956 F.3d 12, 26-27 (1st Cir. 2020) (internal citations, quotation marks and footnotes omitted).

Having found the tax status argument irrational, the court turns to Defendants' next argument: that the cost of including Guam in the SSI program would be extremely great and conserving the public fisc is a rational justification for excluding residents of a particular territory

from SSI benefits eligibility. As discussed above, the Supreme Court in *Gautier Torres* recognized that one conceivable rationale for the exclusion of Puerto Rico from SSI benefits eligibility was that "the cost of including Puerto Rico would be extremely great." 435 U.S. at 5, n.7. The Defendants' maintain that here "it is similarly conceivable that the cost of extending benefits eligibility to Guam residents would be high, [and thus] the exclusion of Guam residents relates rationally to the legitimate governmental interest in preserving public funds." Defs.' Reply at 10, ECF No. 57. *See also* Defs.' Concise Stmnt. of Material Facts #6, ECF No. 48).

The court acknowledges that "protecting the fiscal integrity of Government programs, and of the Government as a whole," is a legitimate concern for Congress. *Lyng v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW*, 485 U.S. 360, 373 (1988). The Plaintiff argues, and the court also recognizes, that cost-savings alone cannot justify a discriminatory regime by the government. *See, e.g., Plyler v. Doe*, 457 U.S. 202, 227 (1982) ("a concern for the preservation of resources standing alone can hardly justify the classification used in allocating those resources."). The United States concedes this. *See* Defs.' Reply at 10, ECF No. 57. Thus, the court must analyze the underlying facts to the Defendants' claim that including Guam in the SSI program would be extremely great.

According to the figures provided by the Defendants, a 1987 Government Accountability Office Report estimated that if Guam residents were eligible for SSI benefits, annual federal spending would increase by $7.8 million, which is equivalent to $17 million in 2019 dollars. *See* Defs.' Concise Stmnt. of Material Facts #1-2, ECF No. 48. "Assuming that a monthly SSI benefits rate for Guam residents would be similar to that of residents of the CNMI,[4] the annual federal spending increase if Guam residents were eligible for SSI benefits would be approximately $175 million ($608.57 x 12 months x 24,000 residents[5])." In 2017, the SSA paid approximately $54.5

---

[4] The average monthly SSI benefit payments for CNMI residents was $608.57. Defs.' Concise Stmnt. of Material Facts #5, ECF No. 48

[5] In 2013, the Guam Legislature estimated that 24,000 residents could be eligible for SSI benefits if the program were extended to include Guam residents. Defs.' Concise Stmnt. of Material Facts #4, ECF No. 48.

billion under the SSI program. *See* SSA's SSI Annual Statistical Report, 2017 at 16, https://www.ssa.gov/policy/docs/statcomps/ssi_asr/2017/ssi_asr17.pdf. Thus, based on the Defendants' range of $17 million to $175 million, including eligible Guam residents in the SSI program would increase the overall budget by a mere 0.03% to 0.3%. As Plaintiff notes, such a minimal increase in cost does not qualify as "extremely great" so as to justify the unequal treatment of eligible citizens residing in Guam. As Chief Judge Gustavo A. Gelpi stated in his opinion,

> Aside from the fact that the cost is minimal compared to the government's budget for such program, this is not a valid justification for creating classifications of United States citizens and justifying the same under the lax scrutiny of social and economic legislation. While line drawing is necessary for Congress to pass social and economic legislation, it is never a valid reason for disparate treatment of United States citizen's fundamental rights.

*United States v. Vaello Madero* ("*Vaello Madero* I"), 356 F. Supp. 3d 208, 215 (D.P.R. 2019), *aff'd*, 956 F.3d 12 (1st Cir. 2020). This court whole heartedly agrees with Chief Judge Gelpi.

Having determined that the cost to include Guam in the SSI program is relatively small and not substantial, the court next examines the Defendants' claim that Congress could have rationally concluded that extending SSI benefits to Guam could disrupt its economy. In *Gautier Torres,* the Supreme Court acknowledged that inclusion of Puerto Rican residents in the SSI program "might seriously disrupt the Puerto Rican economy." 435 U.S. at 5, n.7. Similarly, the United States asserts that providing eligibility for SSI benefits to Guam residents "could 'disrupt [Guam's] economy' by creating 'appreciable inflationary pressure.'" Defs.' Reply at 12-13, ECF No. 57 (citations omitted).

The Plaintiff refutes this assertion, arguing that the government has not provided any evidence to support this contention. *See* Pl.'s Combined Mem. in Opp'n to Defs.' Mot. for Summ. J. and Reply in Supp. of Pl.'s Mot. for Summ. J. at 20, ECF No. 51. Additionally, the Plaintiff claims that even if Congress may have reasonably concluded in the past that including Guam in the SSI program would have disrupted Guam's economy, "such a conclusion is no longer rational." *Id.*

The *Gautier Torres* and *Harris* cases relied upon by the Defendants were decided in 1978 and 1980 respectively. In *Vaello-Madero II*, the court noted that the appellant (the United States)

was not claiming that granting SSI benefits to Puerto Rico residents could presently disrupt the island's economy. *Vaello-Madero II*, 956 F.3d at 21. This court thus directed the parties to address whether the passage of time eroded the United States' claim that extending SSI benefits to Guam residents could disrupt Guam's economy. *See* Order re Supp. Briefing, ECF No. 73.

In its supplemental brief, the Plaintiff urges this court to consider present day circumstances, arguing that "[e]ven if the [Defendants'] concern for the potential negative impact of an influx of aid on the territory's economic stability could have been legitimate three decades ago, that concern can no longer provide rational basis" for Guam's exclusion from the program today. Pl.'s Suppl. Br. at 7, ECF No. 74. The Defendants, on the other hand, assert that "it remains rational to believe that inclusion of Puerto Rico (and Guam) residents in the SSI program could result in economically disruptive effects. This case thus provides no opportunity to consider whether materially changed circumstances could be relevant to an equal protection analysis." Defs.' Resp. to Pl.'s Suppl. Br. at 5, ECF No. 75. The Defendants further argue that "the Ninth Circuit has made clear that '[t]he Supreme Court has been ambivalent on whether changed circumstances can transform a once-rational statute into an irrational law.'" *Id.* (quoting *Burlington N. R.R. Co. v. Dep't of Pub. Serv. Regulation*, 763 F.2d 1106, 1111 (9th Cir. 1985)).

Economic statutes are accorded deference under rational basis review. Nevertheless, in *Burlington*,[6] the Ninth Circuit cited to four cases where the Supreme Court acknowledged that it

---

[6] In *Burlington,* a railroad company challenged a Montana statute that required the company to maintain and staff certain freight offices in the state, asserting that said statute was unconstitutional under the due process clause, the equal protection clause and the commerce clause. 763 F.2d at 1108-09. The railroad company claimed that station agents were no longer needed in certain towns because "many of the duties historically performed by station agents [were] currently performed in centralized, computerized service centers," thus resulting in "redundant and economically wasteful" operations. *Id.* at 1109. Applying a rational basis test, the Ninth Circuit found that the railroad company "presented no evidence to establish that the Montana legislature, in 1969, acted irrationally when it fixed a statutorily-defined population criteria for minimum rail-station service." *Id.* at 1111. The court further stated that even if it were to "consider the rationality of the Montana requirement as of 1985 instead of 1969," the railroad company "failed to meet its burden" because it had "not presented evidence sufficient to persuade the court that changes in rail service in the last 16 years have so drastically altered the need for stations that the bases for the 1969 enactment no longer exist." *Id.*

would be proper for a court to consider more recent information to determine whether significant changes since a statute's enactment might impact a legislative finding supporting such a statute. *Id.* The Ninth Circuit cited to the following cases:

> *Leary v. United States*, 395 U.S. 6, 38 n.68 (1969) (a statute is subject to constitutional attack if legislative facts upon which statute was based no longer exist)[;] *United States v. Carolene Products, Co.*, 304 U.S. 144, 153 (1938) (constitutionality of a statute may be attacked on the basis that the facts upon which it is premised have ceased to exist); *Nashville C. & St. L. Ry. v. Walters*, 294 U.S. 405, 415 (1935) ("[a] statute valid when enacted may become invalid by change in the conditions to which it is applied"); *Chastleton Corp. v. Sinclair*, 264 U.S. 543, 547 (1924) ("[a] Court is not at liberty to shut its eyes to an obvious mistake, when the validity of the law depends upon the truth of what is declared").

*Id.* (parallel citations omitted).

Based on the Ninth Circuit's discussion in *Burlington*, the court concurs with the Plaintiff's contention that the court's constitutional review of the SSI program may take into account present day circumstances. As noted by the United States Supreme Court 96 years ago in *Chastleton*, as quoted above, no longer should ". . . [a c]ourt[, including this court, be] at liberty to shut its eyes to an obvious mistake, when the validity of the law depends upon the truth of what is declared." 264 U.S. at 547. First, the court examines the Defendants' assertion that the Supreme Court's determination that potential economic disruption constitutes a rational basis justifying the exclusion of Puerto Rico residents from SSI eligibility controls this court's analysis. The Supreme Court originally endorsed this rationale in *Gautier Torres*. 435 U.S. at 5, n.7. This footnote in *Gautier Torres* cited to the 1976 Department of Health, Education and Welfare's Report of the Undersecretary's Advisory Group on Puerto Rico, Guam and the Virgin Islands (the "1976 Report")[7] to support an economic theory for why Puerto Rico's inclusion in the SSI program would disrupt its economy. *Id.* However, as discussed by the First Circuit, "the 1976 Report expressly rejected concerns about an influx of aid disrupting the economy as a justification for disparate treatment, concluding that 'the current fiscal treatment of Puerto Rico [and the Territories under the Social Security Act] is unduly discriminatory and undesirably restricts the ability of these

---

[7] A copy of the 1976 Report is appended as Exhibit 1 to Congresswoman Nydia M. Velazquez's Amicus Curiae Brief in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss, filed in *Pena Martinez v. Azar*, No. 18-CV-1206 (D. P.R.), ECF No. 43-1.

jurisdictions to meet their public assistance needs.'" *Vaello-Madero II*, 956 F.3d at 23 (quoting 1976 Report at 6-7) (insertions in original). The First Circuit questioned the "dubious nature of this once-accepted rationale," and stated that "this now defunct argument and citation to . . . the 1976 Report" permitted the court "to consider present-day circumstances surrounding Puerto Rico's exclusion from SSI and whether the current classification is unrelated to a legitimate government interest." *Id.*

The court has had an opportunity to also review the 1976 Report that was cited in the *Gautier Torres* decision. Specifically with regard to Guam and the Virgin Islands, that report recommended that the Department of Health, Education and Welfare "should initiate steps to plan for the extension of the SSI program to Guam and the Virgin Islands." 1976 Report, Tab C at 17. The Report concluded that [the exclusion[] from SSI . . . benefits [is] viewed as unfairly denying a higher standard of living to low-income elderly citizens in the Territories." *Id.* at 16.

Beside the fact that the 1976 Report does not support the Defendants' economic theory of excluding Guam residents from the SSI program so as not to disrupt the island's economy, the rationale for this third factor has also been questioned by Justice Marshall's dissent in *Harris*, where he stated:

> This rationale has troubling overtones. It suggests that programs designed to help the poor should be less fully applied in those areas where the need may be the greatest, simply because otherwise the relative poverty of recipients compared to other persons in the same geographic area will somehow be upset. Similarly, reliance on the fear of disrupting the Puerto Rican economy implies that Congress intended to preserve or even strengthen the comparative economic position of the States vis–à–vis Puerto Rico. Under this theory, those geographic units of the country which have the strongest economies presumably would get the most financial aid from the Federal Government since those units would be the least likely to be "disrupted." Such an approach to a financial assistance program is not so clearly rational as the Court suggests, and there is no citation by the Court to any suggestion in the legislative history that Congress had these economic concerns in mind when it passed the portion of the AFDC program presently being challenged. Nor does appellant refer to any evidence in the record supporting the notion that such a speculative fear of economic disruption is warranted. In my view it is by no means clear that the discrimination at issue here could survive scrutiny under even a deferential equal protection standard.

*Harris,* 446 U.S. at 655-56 (Marshall, J., dissenting) (footnote omitted).

As discussed above, both Justice Marshall and the First Circuit have cast doubt on the Defendants' claim that Congress could have rationally concluded that extending SSI benefits to

Guam could disrupt its economy back in 1972. Even if the court were to accept this contention (which the court does not), the court finds that this third factor is no longer valid because of changed circumstances that have occurred over the last 40 years. Clearly, there is no ". . . evidence in the record supporting the notion that such a speculative fear of economic disruption [on Guam] is warranted." *Id.*

As noted by the Plaintiff, since the 1970s Congress has extended various comparable federal benefit programs to Guam without disrupting the island's economy. Guam received approximately $176 million[8] of annual federal SNAP and Medicaid benefits, and there is no evidence to suggest that the influx of these federal funds have negatively impacted Guam's economy. To the contrary, these public assistance dollars from the federal government have benefitted Guam's economy.

The payment of SSI benefits to citizens in the CNMI further supports the finding that it is irrational to conclude that Guam's economy would be disrupted if it were included in the SSI program. The SSI benefits afforded to citizens in the CNMI has not disrupted its economy in the past three decades, and this would tend to indicate that the same would hold true for Guam. Although the Defendants maintain that Congress may have rationally concluded that SSI benefits would have disrupted Guam's economy in the past, the CNMI's experience of decades of SSI payments and Guam's own receipt of federal public assistance funds have shown that an influx of federal funds through the SSI program would not disrupt Guam's economy at this time. Any conclusions that Congress may have had cannot be rationally supported by the facts known today. Accordingly, the court finds that the third factor proffered by the Defendants does not provide a rational basis for the exclusion of U.S. citizens residing on Guam from the SSI program.

---

[8] For Fiscal Year ("FY") 2016, Guam issued $106 million in SNAP funds as reported in FNS *Supplemental Nutrition Assistance Program State Activity Report Fiscal Year 2016* at 5, (U.S.D.A. Sept. 2017) , a copy of which is available on the U.S. Department of Agriculture's website https://fns-prod.azureedge.net/sites/default/files/snap/FY16-State-Activity-Report.pdf (last visited June 19, 2020). Additionally, in FY 2016, federal Medicaid spending in Guam was $45.8 million, and federal CHIP (Children's Health Insurance Program) funding totaled $24.1 million. *See* MACPAC Fact Sheet, *Medicaid and CHIP in Guam* at 4 (Mar. 2019) (fact sheet is available at https://www.macpac.gov/wp-content/uploads/2016/09/Medicaid-and-CHIP-in-Guam.pdf (last visited June 19, 2020)).

Finally, in justifying why the CNMI was included in the SSI program, the Defendants assert

> "[i]t is conceivable . . . that Congress distinguished between U.S. Territories that existed at the time of the [SSI] program's enactment and a United Nations Trust Territory, because the United States was not a sovereign over the Trust Territory, only a trustee. . . . [E]xtending SSI benefits eligibility to CNMI residents rationally relates to the government's interest in complying with its treaty obligations.

Defs.' Reply at 15, ECF No. 57.

The United States cites to the case of *Besinga v. United States*, 14 F.3d 1356 (9th Cir. 1994), to support its claim that historical distinctions justify the difference in treatment between Guam and the CNMI. There, the court was faced with a constitutional challenge to a federal statute that treated two veteran groups from the Philippines differently. In *Besinga*, World War II Filipino veterans who served with the Philippine Commonwealth Army were ineligible for all U.S. veterans benefits afforded to those who served in the Old Philippine Scouts group. *Id.* at 1358-39. Among various factors discussed in upholding the statute under the rational basis test, the Ninth Circuit noted that the Commonwealth Army was formed by an act of the Philippine legislature while the Old Philippine Scouts were organized pursuant to an Act of Congress, and said forces were incorporated into the U.S. Army and were paid directly by the War Department. *Id.* at 1362. "Given this history, it is conceivable that Congress viewed the Old Philippine Scouts as more integrally a part of the United States armed forces." *Id.*

The United States acquired Guam as a territory in 1898 and its residents have enjoyed U.S. citizenship since 1950.[9] The Northern Mariana Islands ("NMI"), on the other hand, were part of the Trust Territory of the Pacific Islands after World War II and were administered by the United States pursuant to a Trusteeship Agreement with the United Nations Security Council. *Mtoched v. Lynch*, 786 F.3d 1210, 1213 (9th Cir. 2015). The NMI

> elected to enter into a closer and more lasting relationship with the United States. Years of negotiation culminated in 1975 with the signing of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States (hereinafter "Covenant")[.] After a period of transition, in 1986 the trusteeship terminated, and CNMI was fully launched.

---

[9] The Organic Act of Guam conferred U.S. citizenship to all persons born or living on Guam on or after April 11, 1899.

*Id.* (citation omitted).

"Although described as a commonwealth, the relationship is territorial in nature[.]" S. Rep. No. 94-433,[10] at 15 (1975). When the Covenant was signed it envisioned that "[t]he Marianas commonwealth relationship will be significantly closer to the Guam territorial relationship than to the Puerto Rican commonwealth arrangement." *Id. See also Saipan Stevedore Co. Inc. v. Dir., Office of Workers' Comp. Programs*, 133 F.3d 717, 721 (9th Cir. 1998) ("The Covenant codifies the [CNMI]'s determination that its legal rights and obligations more closely parallel those of the residents of Guam, rather than any other United States territory."). Despite the historical distinction in the islands' political relationships with the United States, "[g]eographically, culturally and ethnically, Guam and the [NMI] are one entity, . . . [and t]hroughout the 20th century political separation . . ., the Chamorro people of these islands retained their common culture and language, and their close kin ties." S. Rep. No. 94-433,[11] at 17 (1975).

Although Guam has been more integrally a part of the United States than the CNMI,[12] Congress extended SSI benefits to the CNMI when the Covenant was negotiated. Unfortunately, Guam does not have the similar ability to negotiate with the United States government with regard to the applicability or inapplicability of federal laws to the island. Citizens living on Guam cannot vote in national elections and do not have voting representation in the final approval of legislation by Congress. Similar to the observations of Chief Judge Gelpi, the court highlights that U.S. citizens residing in Guam "are the very essence of a politically powerless group, with no Presidential nor Congressional vote, and with only a non-voting [delegate] representing their

---

[10] This report, entitled "The Covenant to Establish a Commonwealth of the Northern Mariana Islands," was prepared by the Committee on Interior and Insular Affairs of the U.S. Senate to accompany House Joint Resolution 549 and recommended approval of the Covenant.

[11] This report, entitled "The Covenant to Establish a Commonwealth of the Northern Mariana Islands," was prepared by the Committee on Interior and Insular Affairs of the U.S. Senate to accompany House Joint Resolution 549 and recommended approval of the Covenant.

[12] As noted above, Guam became a territory in 1898 – approximately 50 years prior to the United States' trusteeship over the NMI and 88 years prior to CNMI's establishment as a commonwealth.

interests in Congress." *Vaello Madero* I, 356 F. Supp. 3d at 214.  United States citizens residing in Guam are deprived of receiving SSI benefits based solely on the fact that they reside in a U.S. territory.

> Aside from where they live, the otherwise SSI-qualifying residents of [Guam] and of the Northern Mariana Islands have the legally-relevant characteristics in common, *i.e.*, they are (1) low-income and low-resourced, (2) elderly, disabled, or blind, and (3) generally exempted from paying federal income tax. These shared traits undermine [Defendants'] already weakened arguments.

*Vaello-Madero II*, 956 F.3d at 30.

There is no relevant difference between Guam and the CNMI that would rationally justify the denial of SSI benefits to otherwise eligible U.S. citizens residing in Guam, benefits enjoyed by their Chamorro neighbors just 60 miles north of and a 40-minute flight from Guam.  Accordingly, the court holds that the equal protection guarantees of the Fifth Amendment forbid the arbitrary denial of SSI benefits to residents of Guam.

## IV.  CONCLUSION

Based on the above discussion, the court hereby DENIES the Defendants' Motion to Dismiss in its entirety, DENIES the Defendants' Cross Motion for Summary Judgment, and GRANTS the Plaintiff's Motion for Summary Judgment.  Having considered all the grounds proffered by the United States, the court finds that there is no rational basis for excluding Plaintiff from receiving SSI benefits based solely on her residency in Guam.  The court finds that the discriminatory provisions of the SSI statute and any related implementing regulations that discriminate on the basis of status as a resident of Guam violate the Constitution and Organic Act's guarantees of Equal Protection.  The court hereby enjoins Defendants from enforcing against the Plaintiff such discriminatory provisions of the SSI statute and any relevant implementing regulations.

The Clerk's Office shall enter judgment accordingly.

IT IS SO ORDERED.



**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Jun 19, 2020**